Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/31/2023 09:08 AM CDT

In re Change of Name of Bryan C. and Tyler C.,
children under 18 years of age.
Kayla C., appellant, v.
Phillip C., appellee.

___ N.W.2d ___

Filed October 24, 2023.    Nos. A-22-878, A-22-879.

1. **Minors: Names: Appeal and Error.** An appellate court reviews a trial court's decision concerning a requested change in the surname of a minor de novo on the record and reaches a conclusion independent of the findings of the trial court. Provided, however, that where credible evidence is in conflict on a material issue of fact, the appellate court considers and gives weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

2. **Minors: Names.** The question of whether the name of a minor child should be changed is determined by what is in the best interests of the child.

3. **Minors: Names: Proof.** The party seeking the change in surname of a minor child has the burden of proving that the change in surname is in the child's best interests.

4. **Minors: Names.** A court considering whether a name change is in the child's best interests will grant a name change only when the substantial welfare of the child requires the surname to be changed.

5. ____: ____. Nonexclusive factors to consider in determining whether a change of surname is in a child's best interests include (1) misconduct by one of the child's parents; (2) a parent's failure to support the child; (3) parental failure to maintain contact with the child; (4) the length of time that a surname has been used for or by the child; (5) whether the child's surname is different from the surname of the child's custodial parent; (6) a child's reasonable preference for one of the surnames; (7) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; (8)

- 336 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

the degree of community respect associated with the child's present surname and the proposed surname; (9) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (10) the identification of the child as a part of a family unit.

6. ____: ____. In cases where a party requests to change the surname of a minor child, the best interests analysis is not a mechanical process and the court must determine how much weight should be accorded to each factor.

Appeals from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Audrey M. Long, of A. Elliott Law, P.C., L.L.O., for appellant.

No appearance by appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Kayla C., mother of Bryan C. and Tyler C., filed two petitions seeking to change Bryan's and Tyler's surname from their father's surname to her maiden surname, Fry. Phillip C., the boys' biological father, filed objections to the petitions. The district court for Scotts Bluff County denied the requested name changes. Based on the reasons that follow, we affirm.

## BACKGROUND

Bryan and Tyler were both given Phillip's surname at birth. In May 2009, when Bryan was 2 years old and Tyler was 1 year old, Phillip and Kayla divorced. Pursuant to an agreed-upon decree of dissolution, Kayla was awarded legal and physical custody of the boys. The parties further agreed that parenting time with Phillip would take place as mutually agreed by the parties. Bryan and Tyler have remained in Kayla's custody at all times since the decree was placed into effect.

- 337 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

In February 2010, pursuant to an agreed-upon order of modification, Phillip was granted weekend and holiday parenting time with Bryan and Tyler, contingent on his participation in therapy with the boys. Phillip, Bryan, and Tyler successfully completed a therapy program around March or April 2011. As a result, the modified parenting time schedule was placed into effect. Pursuant to the recommendation of the therapist, Phillip and Kayla also agreed that in addition to the court-ordered parenting time, Phillip should have parenting time every Wednesday evening. However, Phillip's parenting time was inconsistent due to Tyler's medical issues. Kayla did not feel comfortable leaving Tyler in Phillip's care, and she testified that Phillip did not take an interest in Tyler's reoccurring medical issues.

In 2012, the licensed psychologist who oversaw Phillip's therapy reported that Phillip "was a cooperative and willing participant and willing to do what was necessary to be involved in his children's lives and have the [strongest] relationship possible. He not only professed his love for his children, but worked to put that love into meaningful action." The record suggests that parenting time between Phillip and the boys continued, albeit sporadically, for the next 4 years.

Around 2016, Tyler began refusing to visit Phillip because of events he found to be traumatic that had taken place when he was with Phillip. Kayla stopped overnight visits with Phillip after she learned that Phillip had shoved his girlfriend in an incident where Phillip had become angry with the boys. The girlfriend was shoved when she had sought to intervene between Phillip and the boys. All these events occurred in the presence of both Bryan and Tyler. Kayla wanted to scale back to daytime visits to help the boys reacclimate to Phillip and become less fearful of staying in his home. Bryan and Tyler never resumed overnight visits.

Beginning with this same timeframe, Kayla allowed the boys to decide when to see Phillip. She testified that the boys' therapist recommended giving them a choice in whether to

- 338 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

attend visits with Phillip and that forcing them to attend visits against their will was traumatizing for them. They would hide under the bed, refuse to come out of the house, refuse to get out of the car, and ultimately refuse to visit Phillip. Kayla also testified that Phillip would get upset at their refusals, which in turn made the boys more upset.

Phillip testified that beginning in late 2015 or early 2016, he would show up for custody exchanges and neither Kayla nor the boys would arrive at the designated exchange meeting place. He further testified that he did not receive any texts, emails, or notifications about these canceled visits beforehand. Phillip said that sometimes Kayla would tell him after the fact that the boys were sick or had a function to attend, but that other times, she never responded to his inquiries about the boys' absence. Eventually, Phillip also stopped going to the designated exchange location for the Wednesday and weekend visit exchanges, because the boys had not attended a visit with him in months and he inferred that the boys were no longer participating in visits. He has had only occasional contact with Bryan and Tyler since 2016.

In June 2022, Kayla filed two petitions seeking to change Bryan's and Tyler's surname from Phillip's surname to her maiden surname, Fry. When she filed them, her legal surname was still Phillip's surname. Phillip filed objections to the name changes. The cases were consolidated on the district court's docket, and trial was held in August 2022.

At the time of trial, Bryan was 16 years old and a junior in high school. Bryan testified that every few months, Kayla encouraged him to have a relationship with Phillip and reminded him that he could visit Phillip whenever he wanted. However, Bryan stated that he does not visit often with Phillip and that when he does, it does not go well. He elaborated that during visits, Phillip talked about Kayla disparagingly, saying she was out getting drunk. Tyler stopped going to visits first, and Bryan stopped going shortly thereafter. Bryan described his relationship with Phillip as "not very good." He said

- 339 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

Phillip texted him from time to time, but rarely called him. Phillip was the one to initiate conversations and would regularly reach out around holidays and birthdays.

Bryan is involved in football, wrestling, and golf and has participated in other sports in the past. He testified that while Kayla and her relatives attend his games, Phillip does not. Bryan said Phillip's absence makes him frustrated, sad, and disappointed. In addition, Phillip did not attend any of Bryan's medical appointments related to his recent wrist surgery.

Bryan testified he wanted to change his surname to Fry. He stated he and Tyler came up with this idea together. Bryan desired this name change, in part, because of Phillip's past abuse of women, including Kayla. Bryan recalled Phillip's pushing Kayla down the stairs and destroying doors when he was angry with her. He also recalled a Thanksgiving with Phillip where he asked to go home and Phillip became angry; Phillip's girlfriend intervened, and Phillip shoved her. Further, Bryan testified that Phillip would often tell him and Tyler that Kayla did not care for them, was trying to take them from Phillip, was getting drunk, and did not love them. Bryan also wanted a name change because of Phillip's absence in his life and Phillip's failure to support him. Bryan testified that he believes Phillip does not care about him or Tyler and that Phillip only tries to have relationships with his daughters.

As for positive reasons to change his surname to Fry, Bryan explained he has a very good relationship with his maternal grandfather, Fletcher Fry. Fletcher has taken him fishing, taught him how to play poker, and regularly spends time with him when he is having a bad day. Bryan described Fletcher as his hero and the father figure in his life.

Bryan further testified, "I feel that I am a Fry." For the past couple of years, he had used the Fry surname in sports activities and requested that it be put on his uniforms. Bryan testified that while he prefers that people address him as "Bryan Fry," he uses Phillip's surname on assignments at school

because it is mandatory. He also uses Phillip's surname on his driver's license, bank accounts, and Social Security card.

Tyler had just turned 15 years old at the time of trial and was a freshman in high school. Like Bryan, Tyler testified that Kayla offered to arrange visits with Phillip, but he stated he did not take her up on those offers. He explained that he does not want to see Phillip and does not view Phillip as his father; he sees him only as his biological father, since Phillip did not raise him.

Tyler does not have a good relationship with Phillip. He admits that his relationship with Phillip is more strained than the relationship between Bryan and Phillip. Tyler blocked Phillip's number on his phone because Tyler does not want to have contact with him whatsoever. Tyler described Phillip as unstable and a bad influence. Tyler testified that Phillip told him and Bryan that Kayla was a "horrible woman," that she was trying to take them away from him, that she was out getting drunk, and that she was a "whore." Tyler could not recall experiencing any fun events with Phillip. Further, Tyler stated Phillip has never been there for him.

Tyler has had ongoing medical issues since he was a young child. In addition to frequent doctor visits, his ailments have resulted in several surgeries. Most recently, in April 2022, Tyler had a hip surgery. He did not recall Phillip's attending any of his medical appointments. Additionally, Tyler plays football and has also played basketball and been involved in wrestling and track in the past. He did not recall Phillip's ever attending one of his games.

Tyler testified that his maternal relatives, including Fletcher, his grandmother, and his uncles, made up his family and support system. Tyler has a very good relationship with Fletcher. Tyler testified he began desiring a name change about 6 years before the trial, when he realized he did not share Fletcher's surname. He wanted his name to match Fletcher's because Fletcher is his "favorite person," Fletcher helped raise him, and he wants to honor Fletcher. Tyler already uses the Fry

- 341 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

surname in sports settings. However, Tyler acknowledged that his legal surname is Phillip's surname and that he uses that name on documents, school report cards, tests, his learner's permit, and bank accounts.

Given their estranged relationship, Tyler did not want to maintain Phillip's surname. Tyler testified that he does not want a relationship with Phillip, that there is no rebuilding the broken bridge between them, and that he does not want Phillip involved in his life. Tyler also admitted that his relationship with his half sister Taylor C. has suffered in part because she has attempted "to push [Phillip] on" him.

Fletcher confirmed at trial that he has been heavily involved in the boys' lives and described himself as one of their caretakers. He sees them frequently, teaches them right from wrong, mediates their disagreements, and attends as many of their sports games as he is able. He has no opposition to Bryan's and Tyler's adopting his surname.

Kayla also supports Bryan's and Tyler's desire to change their surname to Fry. She testified she believes they are mature for their ages and that their reasoning is reasonable. Further, she testified that they have desired these name changes for years prior to her instituting these legal proceedings.

Kayla assumed only minimal responsibility for the current relationship status between Phillip and the boys. She confirmed that Phillip was almost current on his child support as it related to Bryan and Tyler. However, she testified that he still owed her a significant amount of money for medical reimbursements. She also testified that while the boys have not been harassed for sharing Phillip's surname, they do feel upset when people discover their surname. The boys have received compliments directed at Phillip or their paternal grandmother when people learn their surname. Because the boys do not share these sentiments as to Phillip and his family, these comments upset them.

At the time of trial, Kayla was engaged to Timothy Milton (Timothy). Although her surname was still the married name

- 342 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

she shared with Phillip, she said that everyone called her Kayla Fry and that her name on social media included both Fry and Phillip's surname. Kayla testified that when she married Timothy, she would "probably" hyphenate her name as follows: "Kayla Fry[-]Milton." Timothy, however, testified that Kayla would change her surname to Milton when they married. On cross-examination, Kayla also admitted that if the name changes happened on the day of the trial, Bryan and Tyler would have different surnames from both parents.

Phillip does not believe it is in Bryan's or Tyler's best interests to change their surname to Fry. He believes that Tyler is the driving force behind the requests to do so and that Tyler is making this decision based on his emotions, rather than on rational reasoning. He objects to the name changes because he wants to reestablish his relationship with the boys and be a father figure for them. Additionally, to his knowledge, there is nothing in his past that would cause Bryan or Tyler to suffer embarrassment or harassment because they share his surname.

At trial, Phillip admitted that his communication with Kayla is not ideal. He also admitted there were changes he could make to have a better relationship with Bryan and Tyler. Phillip acknowledged he failed to maintain consistent contact with Bryan and Tyler over the years. Before trial, Phillip's last physical contact with the boys occurred in March 2022. At that time, Bryan agreed to attend two dinners and Tyler agreed to attend one dinner at restaurants with Phillip and their two half sisters. Phillip testified that he has respected Bryan's and Tyler's wishes not to see him over the last several years because he felt that pressuring them for parenting time would cause more damage rather than improve their relationship.

Phillip also acknowledged that he was behind on reimbursement payments for Bryan's and Tyler's medical, dental, and vision expenses. He noted, however, that even though he is not required to help pay for the boys' extracurricular activities, he contributes to those expenses.

- 343 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

Phillip testified that he was not worried about any negative impact on his relationship with the boys if the name changes were granted. Nevertheless, Phillip was concerned that the name changes would negatively impact Bryan's and Tyler's relationships with their half sisters. Phillip explained that the half sisters, his daughters Taylor and Jordynn C., were not happy that Bryan and Tyler wanted different surnames.

After taking the case under advisement, the district court entered an order in November 2022 denying Kayla's petition to change Bryan's and Tyler's surname. The court found that although the boys' preferences for a name change were reasonable, the evidence as a whole did not show that a name change was in their best interests. The court further found that the evidence failed to show a name change was necessary for the substantial welfare of either minor child. Kayla now appeals.

## ASSIGNMENTS OF ERROR

Kayla asserts that the district court abused its discretion by denying her request to change Bryan's and Tyler's surname from Phillip's surname to her maiden surname of Fry.

## STANDARD OF REVIEW

[1] An appellate court reviews a trial court's decision concerning a requested change in the surname of a minor de novo on the record and reaches a conclusion independent of the findings of the trial court. *In re Change of Name of Slingsby*, 276 Neb. 114, 752 N.W.2d 564 (2008). Provided, however, that where credible evidence is in conflict on a material issue of fact, the appellate court considers and gives weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

[2-4] The question of whether the name of a minor child should be changed is determined by what is in the best interests of the child. *State on behalf of Connor H. v. Blake G.*, 289 Neb. 246, 856 N.W.2d 295 (2014); *Westerhold v. Dutton*,

- 344 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

28 Neb. App. 17, 938 N.W.2d 876 (2020). The party seeking the change in surname has the burden of proving that the change in surname is in the child's best interests. *Westerhold v. Dutton, supra*. Cases considering this question have granted a change only when the substantial welfare of the child requires the surname to be changed. See *id.*

[5] The Nebraska Supreme Court has set forth a list of non-exclusive factors to consider in determining whether a change of surname is in the child's best interests. See, *In re Change of Name of Slingsby, supra*; *In re Change of Name of Andrews*, 235 Neb. 170, 454 N.W.2d 488 (1990). These factors are (1) misconduct by one of the child's parents; (2) a parent's failure to support the child; (3) parental failure to maintain contact with the child; (4) the length of time that a surname has been used for or by the child; (5) whether the child's surname is different from the surname of the child's custodial parent; (6) a child's reasonable preference for one of the surnames; (7) the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent; (8) the degree of community respect associated with the child's present surname and the proposed surname; (9) the difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed surname; and (10) the identification of the child as a part of a family unit. See *id.*

Applying these factors below, we find that Kayla did not meet her burden of demonstrating that the substantial welfare of the boys requires that their surname should be changed. Thus, she has failed to show that changing the boys' surname to Fry is in their best interests.

## PARENTAL MISCONDUCT

The district court found that Phillip has a history of parental misconduct. We agree. Bryan testified that Phillip was abusive to Kayla during their marriage. Bryan recalled Phillip's pushing Kayla down the stairs and destroying doors

- 345 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

when he was angry with her. He also recalled a Thanksgiving where Phillip became angry and shoved his girlfriend. In addition to the physical misconduct, the evidence showed that Phillip also disparaged Kayla in the presence of the boys. Bryan testified that Phillip would often tell him and Tyler that Kayla did not care for them, that she was trying to take them from Phillip, that she was getting drunk, and that she did not love them. In the same vein, Tyler testified that Phillip told him and Bryan that Kayla was a "horrible woman," that she was trying to take them away from him, that she was out getting drunk, and that she was a "whore."

Phillip also admitted that his communication with Kayla is not ideal. After reviewing the text message exhibits, it appears that at times, both Phillip and Kayla engaged in callous communication with each other. However, we ultimately find this factor cuts in favor of granting the name changes, as both Bryan and Tyler have cited Phillip's misconduct as a reason for the desired name changes.

## Parental Failure to Support Child

Kayla, as the custodial parent, has supported and provided for the boys since their birth. At the time of the hearing, Phillip was essentially current on his child support as it related to Bryan and Tyler. The child support payment history received into evidence demonstrated that Phillip had generally paid child support in a timely fashion. Phillip admitted he was behind on reimbursement payments for their medical expenses, but asserted he also contributed to extracurricular expenses that he was not court ordered to pay.

The district court found that while Phillip had a small arrearage due, he was not delinquent. We agree. Although Phillip had not fully satisfied his financial support obligations, particularly with relation to the boys' medical expenses, the evidence also shows he had provided some funding for extracurricular activities when able. Therefore, given the totality of the circumstances, we find that Kayla has not met

- 346 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

her burden of proof to show that Phillip has failed to financially support the boys.

### Parental Failure to Maintain Contact With Child

Phillip admits that he failed to maintain consistent contact with Bryan and Tyler. However, for the past 6 years, Kayla has permitted the boys to choose whether they see Phillip, which has contributed to their attenuated relationship with him. At trial, both Phillip and Kayla assumed some responsibility for Phillip's strained relationship with Bryan and Tyler.

Phillip communicates with Bryan through texting. Typically, Phillip initiates conversations, and he regularly reaches out around birthdays and holidays. Phillip is unable to communicate directly with Tyler because Tyler blocked Phillip's phone number. Prior to the trial in August 2022, Phillip's last physical contact with the boys occurred in March. Neither Bryan nor Tyler recalled Phillip's ever attending one of their medical appointments. The boys also testified that Phillip does not attend their sporting events.

Bryan's relationship with Phillip is better than Tyler's relationship with Phillip, but both boys have reservations when it comes to Phillip. These reservations largely arise from Phillip's misconduct as outlined above. The evidence shows Phillip made efforts to address some of these issues soon after divorcing Kayla.

In 2010 and 2011, Phillip participated in child-parent psychotherapy with Bryan and Tyler to strengthen his relationship with them and earn regular parenting time. After the therapy concluded, the psychologist reported that Phillip "was a cooperative and willing participant and willing to do what was necessary to be involved in his children's lives and have the [strongest] relationship possible. He not only professed his love for his children, but worked to put that love into meaningful action." Phillip testified that once he completed these therapy sessions, parenting time occurred regularly

- 347 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

on Wednesdays and weekends, but stopped in late 2015 or early 2016 when Kayla and the boys stopped appearing at the designated exchange location. Further, Phillip has respected Bryan's and Tyler's wishes not to see him over the past several years because he felt that pressuring them for parenting time would cause further damage to their relationship.

As the district court found, the evidence demonstrates that Phillip has failed to maintain regular contact with the boys and has been far from proactive in making any concerted effort to reestablish a positive relationship with the boys. The fault is not his alone, however. Kayla has allowed the boys to choose when to see Phillip. Her efforts at encouraging contact occurred sporadically and were not consistent. Tyler has blocked Phillip's phone number so that Phillip cannot call him. And the tumultuous relationship between Phillip and Kayla further divides Bryan and Tyler from Phillip. Ultimately, based on the totality of the evidence, we find that Phillip bears the greater blame for the lack of contact. In recent years, he has not shown interest in the boys by attending their games or otherwise showing interest in their health, education, or general well-being. Thus, while Kayla is not blameless here, we find that this factor favors the allowance of a name change.

### LENGTH OF TIME SURNAME HAS BEEN USED

Bryan and Tyler have used Phillip's surname since birth. They have also used the Fry surname in some public settings in the past 2 years, including their sports activities. However, Tyler acknowledged that his legal surname is Phillip's and that he used that name on documents, school report cards, tests, his learner's permit, and bank accounts. Bryan testified that he prefers it when people address him as "Bryan Fry," but that he uses Phillip's surname on assignments at school because it is mandatory. He also uses Phillip's surname on his driver's license, bank accounts, and Social Security card.

- 348 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

The district court ultimately found that although Bryan and Tyler have recently opted to use the Fry surname in certain settings, they have used Phillip's surname since birth and continued to use it at the time of trial. We agree with the district court that this factor weighs against the petitions for name change.

### Whether Child's Surname Is Different
### From Surname of Custodial Parent

At the time of trial, Kayla was still using Phillip's surname, as demonstrated by her various filings in this case as well as her trial testimony. Timothy, who was engaged to Kayla, testified that Kayla would change her surname to Milton when they married. Alternatively, Kayla testified she would "probably" hyphenate her name as follows: "Kayla Fry[-]Milton." While Timothy stated that the parties were considering a wedding date the following spring, no specific date had been set.

The district court stated it would not be appropriate for it to speculate as to whether Kayla would marry and what her name would be after marriage. The court thus considered this issue only in light of the parties' surnames as of the time of trial. We find that while the testimony regarding Kayla's possible future name change was likely sincere, it remained speculative. The record clearly shows that at the time of trial, Kayla, as the custodial parent, shared Phillip's surname, as did Bryan and Tyler. Therefore, this factor weighs in favor of denying the petitions for name change.

### Child's Reasonable Preference

Bryan was 16 years old and Tyler was 15 years old at the time of trial. Kayla stated that they had desired name changes for years prior to her filing of the present actions. Bryan and Tyler both testified that they preferred the Fry surname. The district court found that their reasoning was quite similar and could be boiled down into two main points. We agree and reiterate those points here. For one, both boys have a strong relationship with their maternal grandfather, Fletcher. Bryan

- 349 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

described Fletcher as his hero, and Tyler said Fletcher is his favorite person. They both feel supported by Fletcher, see him as a father figure, and want to honor him and the rest of the Fry family with the requested name change.

The boys also want this name change because they want to distance themselves from Phillip. Bryan explained that Phillip's abusive actions toward women and Phillip's failure to support him throughout his life had strained their relationship. Tyler described Phillip as unstable and a bad influence. Tyler also stated that Phillip has never been there for him and that he could not recall any fun memories involving Phillip. Simply put, Tyler does not want Phillip involved in his life. We find these preferences reasonable, and thus, this factor weighs in favor of granting the petitions for name change.

### Effect on Preservation and Development of Child's Relationship With Each Parent

As the district court found, if Bryan and Tyler were granted leave to change their surnames to Fry, their relationships with Kayla would remain unchanged. Kayla has legal custody and physical custody of both boys. The record reflects the boys have, and will continue, close relationships with Kayla and her side of the family. There was no evidence presented that this name change would further enhance the boys' relationships with Kayla.

Predicting how Bryan's and Tyler's relationships with Phillip would be affected is much more difficult. Bryan currently has a very strained relationship with Phillip. Tyler wants no relationship with Phillip at all. Phillip testified that he would like a closer relationship with the boys, but in the 5 years leading up to trial, he has only occasionally acted proactively to establish contact. Moreover, he has shown little, if any, interest in their health, activities, or day-to-day lives. Allowing Bryan and Tyler to change their names may cause them to identify even less with Phillip. Phillip, however, testified that he was not worried about any negative impact on his

- 350 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

relationships with the boys if the name change were granted and stated his intent to become more supportive by attending the boys' athletic events.

Alternatively, an argument can be made that denial of the name change could cause further deterioration of the relationship between Phillip and the boys. Bryan and Tyler are acutely aware that the only reason their names would not be changed is that Phillip has opposed their petitions. When the court asked Phillip why he was opposing the name change petitions, his only statement was that he had not had a "fair shot" over the last 6 to 7 years to "be [a] dad" to the boys. Portions of the evidence support his view. The email and text messages between Phillip and Kayla demonstrate a toxic relationship. Kayla gave the boys control of when they would see Phillip and only occasionally reminded them that they could do so. On the other hand, Phillip has done very little to attain a more active role in the boys' lives. Ultimately, we find it telling that Phillip, in answering the court's question, focused on himself rather than the boys. He did not explain how their best interests would be harmed by allowing them to change their names. He solely focused on what he perceived to be injustices to him.

Granting the name change could harm the relationship between Phillip and the boys. Not granting the name change may also harm that relationship. To some degree, this factor should weigh as neutral. However, to the degree that it is Kayla's burden to show that the relationships between the children and each parent would not be negatively affected, that burden has not been met.

### DEGREE OF COMMUNITY RESPECT ASSOCIATED WITH CHILD'S PRESENT SURNAME AND PROPOSED SURNAME

The district court found that there was no direct evidence demonstrating the degree of community respect associated with either Phillip's surname or the Fry surname. We agree,

and because Kayla had the burden in this case, we find this factor weighs in favor of denying the name change.

### Difficulties, Harassment, or Embarrassment That Child May Experience From Bearing Either Surname

The district court also found that there was no evidence the boys would experience any difficulties, harassment, or embarrassment if they adopted the Fry surname. We agree. As for Phillip's surname, Phillip testified that to his knowledge, there is nothing in his past that would cause the boys to suffer embarrassment or harassment because they share his surname. Alternatively, Kayla testified that while the boys have not been harassed, they have experienced some discomfort from bearing Phillip's surname. She testified that when some people learn the boys' surname, they tell them what a great father or paternal grandmother they have. This upsets the boys because they do not share these sentiments.

While the evidence shows the boys may experience some discomfort from bearing Phillip's surname, this discomfort is not based on harassment from their peers or embarrassment in the community. Thus, we find that Kayla has not met her burden of proof on this factor.

### Identification of Child as Part of Family Unit

The district court found that a name change was not necessary for the boys to identify with the Fry family, and we agree. At the time of trial, Bryan and Tyler strongly identified with the Fry family unit. Bryan testified, "I feel that I am a Fry," and Tyler testified that his extended maternal relatives, including Fletcher, his grandmother, and his uncles, made up his family, not Phillip.

On the other hand, the evidence suggests that shedding Phillip's surname could further distance the boys from his family. Phillip was concerned that if the boys changed their surnames, it would negatively impact their relationships with

- 352 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

their half sisters. He explained that the half sisters, Taylor and Jordynn, were displeased that Bryan and Tyler wanted different surnames. Tyler also mentioned that his relationship with Taylor has suffered over the years in part because she has attempted "to push [Phillip] on" him. We therefore find this factor favors the boys' retaining Phillip's surname.

## Resolution

As the 10 factors are nonexclusive, we note that a factor not included in our prior analysis, but considered by the district court, is the age of each child. Bryan and Tyler will both become legal adults in a few years. At that point, if they wish, they may change their names without any best interests analysis or legal resistance from Phillip. The district court noted this point as supporting its denial of the petitions. While we believe that the boys' ages are a proper consideration, we also note that in general, children's wishes with regard to issues affecting them are usually given more weight as they age and mature. As such, we do not give this factor great weight.

[6] Overall, we find that 7 of the 10 factors weigh against the petitions for name change. Three factors weigh in favor of changing the boys' surnames. We note, however, that this analysis is not a mechanical process, and the court must determine how much weight should be accorded to each factor. When due weight is given to each factor, one can only conclude that this is a close case.

Ultimately, we must look to the burden of proof. As the party seeking the name change, Kayla had the burden to show that changing Bryan's and Tyler's surname was in their best interests and that their substantial welfare required the name changes. Having applied the factors and reached varied outcomes as outlined above, we find that Kayla did not meet this burden. The evidence did not show that either child's substantial welfare requires the name change, and as explained above, this is a necessary finding to grant the request. See *Westerhold v. Dutton*, 28 Neb. App. 17, 938 N.W.2d 876

- 353 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
IN RE CHANGE OF NAME OF BRYAN C. & TYLER C.
Cite as 32 Neb. App. 335

(2020). Further, although this is a de novo review, we recognize that the district court observed the witnesses testify and was in the best position to assess the conflicting evidence in this case. For all of the foregoing reasons, we can find no error in the district court's ultimate conclusion and affirm its order denying the petitions for name change.

## CONCLUSION

Based on our review of the record, we affirm the district court's order denying Kayla's request to change Bryan's and Tyler's surname.

AFFIRMED.